UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE RELIABLE AUTOMATIC SPRINKLER
CO., INC.,

                Plaintiff,

-against-

RIVERSIDE BRASS & ALUMINUM
FOUNDRY, LIMITED,

                Defendant.

**MEMORANDUM OPINION AND ORDER**

20-CV-10220 (PMH)

PHILIP M. HALPERN, United States District Judge:

This diversity action arises from a dispute regarding allegedly defective brass castings that The Reliable Automatic Sprinkler Co., Inc. ("Plaintiff") purchased from Riverside Brass & Aluminum Foundry, Limited ("Defendant"). Plaintiff asserts three claims for relief: (1) breach of contract; (2) breach of the implied warranty of merchantability; and (3) breach of the implied warranty for fitness for a particular purpose. (Doc. 1, "Compl." ¶¶ 76-98). This case was reassigned from Judge Cronan to me on February 23, 2021. Before me now is Defendant's motion to dismiss the Complaint for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). The motion was fully briefed as of April 21, 2021. (Doc. 25; Doc. 25-1, "Def. Br.";[1] Doc. 26, "Pl. Opp.";[2] Doc. 28, "Def. Reply").

For the reasons set forth below, Defendant's motion is DENIED.

---

[1] Defendant also submitted, in support of the motion, a Declaration of its President, David Seyler, and accompanying exhibits. (Doc. 25-4, "Seyler Decl."; Doc. 25-5; Doc. 25-6; Doc. 25-7; Doc. 25-8).

[2] Plaintiff also filed, in opposition to the motion, a Declaration of its Vice President of Product Technology & Compliance, Steven Wolin, and accompanying exhibits. (Doc. 27, "Wolin Decl."; Doc. 27-1; Doc. 27-2; Doc. 27-3).

**BACKGROUND**

The facts herein are taken from (1) the Complaint;[3] (2) the Declaration of Steven Wolin; and (3) the Declaration of David Seyler, along with the exhibits annexed to each document.

Plaintiff—headquartered in Elmsford, New York—is a manufacturer and supplier of a variety of fire protection products, including fire sprinklers. (Compl. ¶ 2). Defendant—located in New Hamburg, Ontario—is a manufacturer of brass and aluminum products. (*Id.* ¶ 3; Seyler Decl. ¶ 9). For years, Plaintiff has purchased component parts, including specialized brass castings, from Defendant, which Plaintiff incorporates into its fire sprinklers. (Compl. ¶¶ 3, 27, 30).

In 2016, Plaintiff updated its standard General Purchase Order Terms and Conditions ("Terms and Conditions"), which governs its purchases of goods and services from suppliers. (*Id.* ¶ 31). On April 4, 2016, Plaintiff sent the updated Terms and Conditions to Defendant, with the intention that these Terms and Conditions would govern all purchases Plaintiff made from that point forward. (*Id.* ¶¶ 4, 32; Seyler Decl. ¶¶ 46-47). The Terms and Conditions contain, *inter alia*, the following choice-of-law and jurisdictional provisions:

> 23. <u>Governing Law</u>. All matters arising out of or relating to these Terms and any Orders shall be governed by and construed in accordance with the internal laws of the State of New York without giving effect to any choice or conflict of law provision or rule that would cause the application of the laws of any jurisdiction other than those of the State of New York. The parties agree that the United Nations Convention on Contracts for the International Sale of Goods (the "CISG") does not apply to these Terms or any Orders and specifically exclude the application of the provisions of the CISG.
>
> 24. <u>Submission to Jurisdiction</u>. Any legal suit, action or proceeding arising out of or relating to these Terms or any Order shall be instituted only in the United States District Court for the Southern

---

[3] Plaintiff annexed three exhibits to the Complaint, each of which are integral to, or referred to in, the Complaint: (1) the Terms and Conditions (Doc. 1-1, "Compl., Ex. A"); (2) copies of the ten purchase orders sent by Plaintiff to Defendant between March 23, 2018 and January 3, 2019 (Doc. 1-2, "Compl., Ex. B"); and (3) pictures of some allegedly defective brass castings that Plaintiff purchased from Defendant (Doc. 1-3).

> District of New York or in the courts of the State of New York located in New York County, and each party irrevocably submits to the exclusive personal jurisdiction of and exclusive venue in such courts in any such suit, action or proceeding.

(Compl., Ex. A ¶¶ 23-24). Plaintiff alleges that Defendant responded with "unspecified concerns" about "unidentified provisions" in the Terms and Conditions. (*Id.* ¶ 33). Plaintiff asked Defendant to clarify its concerns, but Defendant did not respond. (*Id.* ¶ 34). Ultimately, Defendant did not explicitly accept or reject the Terms and Conditions. (*Id.* ¶ 37; Seyler Decl. ¶ 50).

Nonetheless, between March 23, 2018 and January 3, 2019, Plaintiff sent Defendant ten purchase orders for more than 440,000 brass castings. (Compl. ¶¶ 6, 35; *see also id.*, Ex. B). The total cost for those brass castings was over $1.1 million. (*Id.* ¶ 46). Defendant filled each purchase order and sent forty invoices in connection therewith to Plaintiff's office in New York. (*Id.* ¶¶ 37, 48; Seyler Decl. ¶¶ 5, 51; Wolin Decl. ¶ 6). According to Plaintiff, the purchase orders "expressly provided that each order was subject" to the Terms and Conditions. (Compl. ¶¶ 7, 36, 47; *see also id.*, Ex. B (showing that the purchase orders state: "Applicable Reliable Automatic Sprinkler Co. Terms and Conditions Apply.")). Therefore, by filling Plaintiff's purchase orders, Plaintiff maintains that Defendant "accepted, ratified, and agreed to be bound by" the Terms and Conditions. (Compl. ¶ 38).

Once Plaintiff received the brass castings, Plaintiff incorporated them into its fire sprinklers. (*Id.* ¶ 49). What happened next forms the gravamen of this dispute. In December 2018, Plaintiff discovered that some of the castings were cracking during routine use. (*Id.* ¶¶ 11, 50). Upon this discovery, Plaintiff launched an extensive investigation—both in terms of manpower and money—to determine the cause of the cracking and to identify any defective castings before they were incorporated into fire sprinklers. (*Id.* ¶¶ 51, 53, 74). Plaintiff informed Defendant of the allegedly defective castings on or about December 18, 2018. (*Id.* ¶ 54).

Over the next few months, Plaintiff continued to identify allegedly defective castings and eventually returned over 86,000 of them to Defendant. (*Id.* ¶¶ 58-59). Defendant credited Plaintiff for some, but not all, of the returned castings; Defendant did not, however, reimburse Plaintiff for its inspection, testing, and replacement costs. (*Id.* ¶¶ 60-62).

To make matters worse, on March 27, 2019, one of Defendant's high-ranking employees allegedly told Plaintiff that Defendant had solved the problem with the castings, and had shared that solution with one of Plaintiff's competitors months earlier. (*Id.* ¶ 64). Defendant's failure to simultaneously share this solution with Plaintiff allegedly caused Plaintiff significant, and otherwise avoidable, economic losses. (*Id.* ¶¶ 65-66). In all, Plaintiff insists that it suffered a minimum of $8 million in damages—including replacement costs, inspection and testing costs, and lost profits—in its attempt to resolve the problems with the allegedly defective castings. (*Id.* ¶ 74).

This litigation followed.

## STANDARD OF REVIEW

"A party may move to dismiss an action for 'lack of personal jurisdiction.'" *Yak v. BiggerPockets, L.L.C.*, No. 19-CV-05394, 2020 WL 5505351, at *3 (S.D.N.Y. Sept. 10, 2020) (quoting Fed. R. Civ. P. 12(b)(2)), *aff'd*, No. 20-3498, 2022 WL 67740 (2d Cir. Jan. 7, 2022). "Although it is a plaintiff's burden to establish jurisdiction in response to such a motion, 'the showing a plaintiff must make to defeat a defendant's claim that the court lacks personal jurisdiction over it varies depending on the procedural posture of the litigation.'" *Id.* (quoting *Dorchester Fin. Secs., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84 (2d Cir. 2013) (internal quotation makes omitted)). At this stage, "[i]n order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a *prima facie* showing that jurisdiction exists." *Licci ex rel. Licci*

*v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013) (internal quotation marks omitted). "Such a showing entails making legally sufficient allegations of jurisdiction, including an averment of facts that, if credited[,] would suffice to establish jurisdiction over the defendant." *Penguin Grp. (USA) Inc. v. Am. Buddha*, 609 F.3d 30, 35 (2d Cir. 2010) (alteration in original, internal quotation marks omitted). The Court "may consider materials outside the pleadings" in analyzing a motion to dismiss under Rule 12(b)(2), *Johnson*, 791 F. App'x at 241, and "[t]he allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (citation omitted). "If the parties present conflicting affidavits, however, 'all factual disputes are resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party.'" *Krisko v. Marvel Ent., LLC*, 473 F. Supp. 3d 288, 297 (S.D.N.Y. 2020) (quoting *Seetransport Wiking Trader Schiffarhtsgesellschaft MBH & Co., Kommanditgesellschaft v. Navimpex Centrala Navala*, 989 F.2d 572, 580 (2d Cir. 1993)). While the Court "construe[s] the pleadings and any supporting materials in the light most favorable to the plaintiff[]," *Licci*, 732 F.3d at 167, and must "resolv[e] all doubts in" a plaintiff's favor, a plaintiff's "*prima facie* showing must be factually supported," *NuMSP, LLC v. St. Etienne*, 462 F. Supp. 3d 330, 341 (S.D.N.Y. 2020) (internal quotation marks omitted, italics added).

"Assessing whether Defendants are subject to specific long-arm personal jurisdiction—that is, jurisdiction based upon their contacts with the state—is a two-step process." *Yak*, 2020 WL 5505351, at *3. "First, the Court must determine whether personal jurisdiction exists under New York's long-arm statute, C.P.L.R. § 302." *Id*. (citing *Eades v. Kennedy, PC Law Offices*, 799 F.3d 161, 168 (2d Cir. 2015)). "Second, if New York's particular requirements are satisfied, the Court 'analyze[s] whether personal jurisdiction comports with due process protections established under

the Constitution.'" *Id*. (quoting *Eades*, 799 F.3d at 168). Where, however, the dispute is governed by "a valid and enforceable forum selection clause," and the claim is included, and not excluded by the language of the forum selection clause, the Court need not conduct a personal jurisdiction analysis because the clause constitutes "consent to personal jurisdiction." *NuMSP, LLC*, 2020 WL 2614770, at *6 (internal quotation marks omitted).

## ANALYSIS

Plaintiff, in its Complaint, devotes one sentence to its multiple and alternative allegations concerning personal jurisdiction: "This Court has personal jurisdiction over [Defendant] pursuant to CPLR §§ 301 and 302 because: (a) Section 25[4] of the Terms and Conditions provides that any 'action or proceeding arising out of or relating to these Terms and any Order shall be instituted only in the United States District Court for the Southern District of New York or in the courts of the State of New York located in New York County, and each party irrevocably submits to the exclusive personal jurisdiction of and exclusive venue in such courts in any such suit, action or proceeding'; and, in the alternative, (b) [Defendant] transacted business within, and/or contracted to provide goods in, the State of New York by filling [Plaintiff's] multiple orders of a substantial quantity of goods (including the brass castings) over the course of several years." (Compl. ¶ 22).

I.  General Personal Jurisdiction Under N.Y. C.P.L.R. § 301

As a threshold matter, Plaintiff alleges that Defendant is subject to general personal jurisdiction in this forum under N.Y. C.P.L.R. § 301. (*Id.*). General personal jurisdiction is when an entity's contacts with New York are "so continuous and systematic as to render [it] essentially at home in the forum State." *Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (alteration in

---

[4] Plaintiff, in paragraph 22 of the Complaint, alleges that Defendant is subject to personal jurisdiction under "Section 25 of the Terms and Conditions." (Compl. ¶ 22). The language that Plaintiff quotes in that paragraph of the Complaint, however, is set forth in Section 24 of the Terms and Conditions. (*Id.*, Ex. A ¶ 24).

original, internal quotation marks omitted). This type of jurisdiction is typically limited to those states where a defendant has "its formal place of incorporation or principal place of business . . . ." *Id*. at 139 n.19. Defendant argues that it is not subject to general personal jurisdiction in New York because it "is a Canadian company with no current or historical presence in New York." (Def. Br. at 6 n.3 (citing Seyler Decl. ¶¶ 7-19)). Plaintiff does not oppose this argument, and therefore, the Court deems Plaintiff's general personal jurisdiction allegations abandoned. *See Gilleo, et al. v. The J.M. Smucker Co.*, No. 20-CV-02519, 2021 WL 4341056, at *8 (S.D.N.Y. Sept. 23, 2021). Accordingly, the Court focuses solely on Plaintiff's contention that Defendant is subject to its specific personal jurisdiction.

II.   Personal Jurisdiction Under N.Y. C.P.L.R. § 302(a)(1)

Plaintiff first claims that Defendant is subject to this Court's specific personal jurisdiction because Defendant "transacted business within, and/or contracted to provide goods in, the State of New York by filling [Plaintiff's] multiple orders of a substantial quantity of goods (including the brass castings) over the course of several years." (Compl. ¶ 22). Plaintiff's allegations, however, fail to establish a *prima facie* case that Defendant either "transacted business" or "contracted to provide goods in" New York.[5]

   A.   Defendant Did Not Transact Business In New York

N.Y. C.P.L.R. § 302(a)(1) provides:

---

[5] Plaintiff, in its opposition, expands its argument for personal jurisdiction under N.Y. C.P.L.R. § 302. Plaintiff argues that the transactions at issue in this case would not have arisen but for Defendants' numerous visits to Plaintiff's New York office dating back to "the early 1980s" and 2005. (Pl. Opp. at 10-12; Wolin Decl. ¶¶ 2-3). "The Court disregards this argument, as a party may not amend [its] pleading by presenting new theories in briefs." *Yak*, 2020 WL 5505351, at *4 n.6 (citing *Wright v. Ernst & Young LLP*, 152 F.3d 169, 178 (2d Cir. 1998)); *see also Budhani v. Monster Energy Co.*, No. 20-CV-01409, 2021 WL 5761902, at *3 (S.D.N.Y. Dec. 3, 2021). Even if the Court accepted this belated argument, Plaintiff does not explain how those visits in the past bear any nexus to the claims asserted in this litigation. (*See* Def. Reply at 2-6).

7

> (a) Acts which are the basis of jurisdiction. As to a cause of action arising from any of the acts enumerated in this section, a court may exercise personal jurisdiction over any non-domiciliary, or his executor or administrator, who in person or through an agent:
>
> 1. transacts any business within the state or contracts anywhere to supply goods or services in the state[.]

When applying the "transacting business" prong of N.Y. C.P.L.R. § 302(a), the Second Circuit has explained that courts must examine whether Plaintiff has pled that Defendant "(1) . . . transact[ed] any business in New York and, if so, (2) whether the cause of action aris[es] from such a business transaction." *Licci*, 673 F.3d at 60 (third alteration in original, internal quotation marks omitted). To guide the analysis as to the first prong, the Second Circuit has "identified four non-exclusive factors" for courts to assess:

> (i) whether the defendant has an ongoing contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires [parties to that contract] to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Rosenblatt v. Coutts & Co. AG*, 750 F. App'x 7, 10 (2d Cir. 2018) (quoting *Sunward Elecs., Inc. v. McDonald*, 362 F.3d 17, 22 (2d Cir. 2004) (alterations in original)).

Although the Court is guided by the four factors above, "the overriding criterion" for the first step of N.Y. C.P.L.R. § 302(a)(1) analysis "is whether the entity purposefully avails itself of the privilege of conducting activities within New York." *Id*. at 9-10 (internal quotation marks omitted). The answer to this question is necessarily fact-dependent and the Court must consider "the totality of the circumstances . . . in determining whether a defendant has 'invok[ed] the benefits and protections of [New York's] laws.'" *Id*. (quoting *Licci*, 673 F.3d at 61-62 (first

alteration added)). While a single claimed act may suffice, *Licci*, 673 F.3d at 62, it is the quality, not the quantity, of Defendant's contacts with the forum that guides the Court's analysis. *Rosenblatt*, 750 F. App'x at 10; *see also, e.g.*, *Lawrence Wisser & Co., Inc. v. Slender You, Inc.*, 695 F. Supp. 1560, 1562 (S.D.N.Y. 1988) (dismissing complaint under Rule 12(b)(2) and concluding, *inter alia*, that alleging "approximately 80 telephone calls and 30 faxes" was insufficient to constitute "transacting business" under N.Y. C.P.L.R. § 302(a)(1)). After "[l]ooking to the factors outlined by the Second Circuit," the Court concludes that "Plaintiff has not pled facts establishing that [Defendant] 'purposefully avail[ed] [it]self of the privilege of conducting activities within New York.'" *Yak*, 2020 WL 5505351, at *5 (quoting *Rosenblatt*, 750 F. App'x at 9-10).

Here, although the parties "disagree regarding the existence of an enforceable agreement" controlling their relationship, Plaintiff has sufficiently alleged that an ongoing contractual agreement—namely, the Terms and Conditions—governed its purchases of brass castings between March 23, 2018 and January 3, 2019. *C.B.C. Wood Prod., Inc. v. LMD Integrated Logistics Servs., Inc.*, 455 F. Supp. 2d 218, 225 (E.D.N.Y. 2006); *see also Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001) ("[W]here the issue is addressed on affidavits, all allegations are construed in the light most favorable to the plaintiff and doubts are resolved in the plaintiff's favor."). Yet, even assuming an ongoing contractual relationship existed between Plaintiff and Defendant, Plaintiff still fails to allege that Defendant transacted business in New York within the meaning of N.Y. C.P.L.R. § 302(a)(1).

That is because Plaintiff does not allege that the purchase orders (which were allegedly subject to the Terms and Conditions) were "negotiated or executed in New York," nor does Plaintiff allege that any of Defendants' representatives "visited New York for the purpose of

meeting with" Plaintiff's representatives regarding the parties' relationship. *Rosenblatt*, 750 F. App'x at 10. Moreover, Plaintiff does not allege that Defendant fulfilled any of its contractual obligations in New York—Defendant received Plaintiff's specifications and purchase orders in Canada, manufactured the castings in Canada, and transferred title to Plaintiff in Canada (Seyler Decl. ¶¶ 30-39)—other than sending invoices and related e-mails to representatives in Plaintiff's New York office. (Wolin Decl. ¶ 6; Seyler Decl. ¶ 5; Def. Br. at 11-12). But merely sending invoices and related correspondence, without more, "does not provide an adequate basis for personal jurisdiction." *C.B.C. Wood Prod., Inc.*, 455 F. Supp. 2d at 226; *see also Falow v. Cucci*, No. 00-CV-04754, 2003 WL 22999458, at *4 (S.D.N.Y. Dec. 19, 2003) (sending "various correspondences and documents to plaintiff's New York office via mail and facsimile" insufficient to establish personal jurisdiction over defendants). Lastly, "[w]hile it is relevant that the [Terms and Conditions] contain[] a choice of law clause indicating that New York law would apply," *Int'l Customs Assocs., Inc. v. Ford Motor Co.*, 893 F. Supp. 1251, 1260 (S.D.N.Y. 1995), *aff'd*, 201 F.3d 431 (2d Cir. 1999), almost every other aspect of the parties' dealings fails to demonstrate that Defendant "purposely projected [it]self into New York to avail [it]self of the benefits and protections of [New York's] laws." *Roper Starch Worldwide, Inc. v. Reymer & Assocs., Inc.*, 2 F. Supp. 2d 470, 475 (S.D.N.Y. 1998).

Indeed, even though Plaintiff has sufficiently alleged the existence of a contractual relationship, and that the Terms and Conditions contained a New York choice-of-law clause, Defendant's only conduct alleged to have occurred in New York is that Defendant sent invoices and related correspondence to Plaintiff's New York office. The quality of such contact, which is quite limited, fails to satisfy the "overriding criterion" of the "transacting business" analysis, which looks to whether Defendant "purposefully avail[ed] itself of the privilege of conducting activities

within New York." *Rosenblatt*, 750 F. App'x at 9-10; *see also C.B.C. Wood Prod., Inc.*, 455 F. Supp. 2d at 226 (allegations "that the parties had an on-going relationship and that the Defendant sent invoices and limited correspondence into New York" insufficient to establish personal jurisdiction under N.Y. C.P.L.R. § 302(a)). "Accordingly, the Court finds that it may not exercise jurisdiction over the Defendant pursuant to the transacting of business prong of [S]ection 302(a)(1)." *Id*.

### B. Defendant Did Not Contract to Provide Goods In New York

Plaintiff also claims that Defendant is subject to this Court's personal jurisdiction under the second prong of Section 302(a)(1), which extends jurisdiction to defendants who "contract anywhere to supply goods or services in the state." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 789 (2d Cir. 1999); (*see also* Compl. ¶ 22 (alleging that Defendant "contracted to provide goods in[] the State of New York . . .")). In applying this provision, courts may consider:

> (1) whether the defendant collected New York sales tax in connection with the transaction; (2) whether the documents or purchase orders provide for shipment into New York; (3) whether the defendant solicited the contract in New York; (4) whether the defendant entered New York for purposes of performing the contract; and (5) any other factor showing that the defendant purposefully availed itself of the privilege of transacting business in New York.

*C.B.C. Wood Prod., Inc.*, 455 F. Supp. 2d at 226. Here, it is undisputed that Plaintiff took title of the castings in Canada and had the castings transported to its facility in South Carolina. (Compl., Ex. B; Seyler Decl. ¶¶ 32-34). Further, Plaintiff does not allege that Defendant solicited the purchase orders in New York, nor that Defendant collected New York sales tax in connection with

the purchase orders.[6] Plaintiff's only allegation that Defendant entered New York for purposes of fulfilling its obligations in connection with the purchase orders is that Defendant sent invoices to Plaintiff's New York office. (Wolin Decl. ¶ 6; *see also id.*, Ex. 3). But as discussed *supra*, a foreign defendant's act of sending invoices to New York, without any other evidence that that defendant "purposefully availed itself of the privilege of transacting business in New York," fails to establish personal jurisdiction. *C.B.C. Wood Prod., Inc.*, 455 F. Supp. 2d at 226. Accordingly, Plaintiff fails to allege personal jurisdiction under the goods or services prong of Section 302(a)(1).

III. Personal Jurisdiction Under the Terms and Conditions

Finally, Plaintiff seeks to establish personal jurisdiction by alleging that Defendant agreed to be bound by the jurisdictional provision contained in the Terms and Conditions. (Compl. ¶ 22; *see also id.*, Ex. A ¶ 24). As noted previously, that provision provides:

> Any legal suit, action or proceeding arising out of or relating to these Terms or any Order shall be instituted only in the United States District Court for the Southern District of New York or in the courts of the State of New York located in New York County, and each party irrevocably submits to the exclusive personal jurisdiction of and exclusive venue in such courts in any such suit, action or proceeding.

(Compl., Ex. A ¶ 24). According to Plaintiff, because the Terms and Conditions applied to the purchase orders, and because Defendant continued to fulfill those purchase orders, Defendant "thereby accepted, ratified, and agreed to be bound by, the provisions of the Terms and Conditions," including the jurisdictional provision. (Compl. ¶ 38). Defendant, to the contrary, maintains that it rejected the Terms and Conditions, and therefore, never agreed to be bound by the jurisdictional provision. (Def. Br. at 14-15; Def. Reply at 8-10; Seyler Decl. ¶¶ 46-51).

---

[6] To the extent the purchase orders address any taxes, the orders appear to be tax exempt. (*See* Compl., Ex. B (stating that "ORDER IS TAX EXEMPT")).

12

Where, as here, "the parties present conflicting affidavits, . . . 'all factual disputes are resolved in the plaintiff's favor, and the plaintiff's *prima facie* showing is sufficient notwithstanding the contrary presentation by the moving party.'" *Krisko*, 473 F. Supp. 3d at 297 (quoting *Seetransport*, 989 F.2d at 580). Therefore, notwithstanding the conflicting evidence presented by Defendant, the Court must accept as true Plaintiff's allegations that Defendant agreed to be bound by the jurisdictional provision contained in the Terms and Conditions. (*See* Compl. ¶ 22). Defendant, given the benefit of discovery, may eventually be able to prove that it did not agree to be bound by the Terms and Conditions. But at this stage of the litigation, the Court cannot make that factual finding in the face of Plaintiff's allegations.

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss the Complaint is DENIED. Plaintiff's claims shall proceed to discovery. Defendant shall file an Answer within fourteen days of the date of this Order. The Court will issue a Notice of Initial Pretrial Conference shortly.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 25.

Dated: White Plains, New York
       January 14, 2022

SO ORDERED:

_____
Philip M. Halpern
United States District Judge